# United States District Court
# Northern District of Indiana

| | |
|---|---|
| CROP PRODUCTION SERVICES INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHAD RUDICEL, LYNSEY RUDICEL, | ) |
| and RUDICEL INVESTMENTS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ———————————————— | ) Civil Action No. 3:14-CV-1751 JVB |
| | ) |
| RUDICEL INVESTMENTS, INC., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SUNRISE FARMS LLC, DE JONG | ) |
| FAMILY FARMS LLC, and | ) |
| PROVIDENCE DAIRY LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Crop Production Services Inc. (CPS) sued Defendants Chad Rudicel, Lynsey Rudicel, and Rudicel Investments, Inc. to collect a debt for agricultural products and services totaling $471,827.25, excluding interest. This matter is before the Court on Lynsey Rudicel's motion for summary judgment (DE 83).

**A.    Summary Judgment Standard**

A motion for summary judgment must be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.     Facts**

Chad and Lynsey Rudicel, a married couple, are the sole shareholders of Rudicel Investments, Inc. Chad is the president of the corporation and Lynsey is its secretary. CPS is a seller of agricultural supplies such as seed, fertilizer, and herbicides that the parties refer to as

inputs.

In 2012, Chad completed a form document supplied by CPS. The front side of the form is labeled "Customer Profile." (DE 87-4, 1). In the blank after the words "Applicant Full Legal Name," Chad printed "Chad & Lynsey Rudicel." *Id.* He filled in Lynsey's date of birth and Social Security number. In the section of the form regarding "Business Setup," in the blank after the letters "D/B/A," Chad printed "Rudicel Investments, Inc." *Id.* In that same section, he printed "Chad & Lynsey Rudicel" as the "authorized person." The reverse side of the form bears the heading "COMMERCIAL CREDIT AGREEMENT/TERMS AND CONDITIONS." *Id.* at 2. Chad signed the agreement both as "Applicant" and "Guarantor." Lynsey's signature doesn't appear on the document. Lynsey testified that she was not involved in filling out the document, but that she was sure Chad discussed it with her because they talk about everything.

Following the completion of the Customer Profile and Credit Agreement, CPS established an open account that it named "Rudicel Investments, Inc., Chad & Lynsey Rudicel." (Aff. of Carl E. Kidder, DE 87-6, 2). CPS invoices and monthly statements for inputs supplied to Rudicel Investments were sent to "Rudicel Investments, Inc., Chad & Lynsey Rudicel" at 4562 North County Road 900 East, Logansport, Indiana, which is both the Rudicels' residence and the mailing address for Rudicel Investments, Inc. Lynsey never objected to her name being on the invoices.

Lynsey never placed an order with CPS, either on behalf of Rudicel Investments Inc. or for herself. Her involvement with CPS consisted of writing checks to pay invoices sent by CPS, discussions with Rudicel Investments' accountants, and attending a few meeting with Curt Kline, a CPS employee, regarding pricing and programs for inputs.

After the account with CPS was established, Rudicel Investments, Inc. made numerous purchases of inputs. CPS sent monthly statements for the account apparently without incident until June 30, 2014, when a monthly statement in the amount of $556,520.41 was not paid in full, precipitating this lawsuit. CPS claims that Chad and Lynsey and Rudicel Investments, Inc., are indebted to it for the unpaid purchase price of inputs totaling $471,827.25 plus interest at the rate of 21% per year in accordance with the credit agreement.

**C.**     **Discussion**

The issue before the Court is whether there is any evidence from which a reasonable trier of fact could find that a contract existed to establish an account stated or open account between Lynsey Rudicel personally and CPS for the purchase of agricultural inputs. The Court finds that there is not.

"An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, express or implied, to pay the balance." *Jackson v. Trancik*, 953 N.E.2d 1087, 1091 (Ind. Ct. App. 2011). An account stated can't be the origin of a debtor-creditor relationship. Joseph M. Perillo, Calamari and Perillo on Contracts 719 (6th ed. 2009). Thus, there must have been an underlying agreement between Lynsey and CPS that Lynsey would be personally liable for inputs ordered for Rudicel Investments, Inc. before she could be liable on an account stated.

CPS argues that there is some evidence of an implied contract: Lynsey's name and personal information appear on the customer profile that was part of CPS's credit agreement, she had some general knowledge that Chad was going to establish an account with CPS, and CPS

sent bills with her name on them, to which she did not object.

An implied contract is an agreement that is established by the acts and conduct of the parties. *McCart v. Chief Exec. in Charge*, 652 N.E.2d 80, 85 (Ind. Ct. App 1995). No evidence of such a contract can be found here, where CPS can't point to anything Lynsey did that could lead to the inference she agreed to be personally responsible to pay for the inputs ordered for Rudicel Investments, Inc. Chad filled out the applicant information on the credit agreement, no one asked Lynsey to sign it, and CPS decided how to address its invoices and statements. General knowledge that Chad was opening an account does not amount to an agreement to be personally liable on the account. Receiving bills addressed to Lynsey as well as Rudicel Investments, Inc., is perfectly consistent with Lynsey's role as secretary of Rudicel Investments, Inc. Accordingly, Lynsey's failure to object to her name on the bills does not give rise to an inference that she had agreed to be personally liable for those bills. For the same reasons, CPS's claim against Lynsey on an open account fails: there is no evidence of an agreement to establish a debtor-creditor relationship between them.

**D.     Conclusion**

For the foregoing reasons, Lynsey Rudicel's motion for summary judgment (DE 83) is GRANTED.

SO ORDERED on May 6, 2016.

        s/ Joseph S. Van Bokkelen
        Joseph S. Van Bokkelen
        United States District Judge
        Hammond Division